## SERVICE OF SUMMONS AT USUAL PLACE OF RESIDENCE WHEN DEFENDANT IS ABSENT.

Common Pleas Court of Hamilton County.

EDWARD G. GAITHER v. THE COLTER COMPANY.

Decided, March 20, 1913.

*Action on an Account Contracted by Another than the Defendant—Summons Served at Defendant's Usual Place of Residence While He Was in Europe—Place of Abode Distinguished from Usual Place of Residence.*

1. In an action to enjoin levying of execution on a magistrate's judgment and for the vacation of said judgment, fraud in procuring the judgment is not shown by evidence that plaintiff had denied liability on the account and defendant had charged it to profit and loss, where plaintiff is not able to show that notice had been received by the defendant not to sell any more goods on his account to the party who contracted the debt.

2. The fact that the defendant was in Europe at the time the summons was left at his usual place of residence, and as a consequence he was not aware that suit had been brought until judgment had been rendered against him by default, does not constitute an unavoidable casualty or misfortune preventing his making a defense, nor does it afford ground in equity for setting the judgment aside.

*Cogan, Williams & Ragland,* for plaintiff.
*Brumleve & Moorman,* contra.

MAY, J.

Plaintiff filed his petition alleging that the defendant recovered a judgment against him in the sum of $88.95 and $3.90 costs, and that afterward, on the 14th day of May, 1912, a transcript of said judgment as taken before M. R. Dempsey, justice of the peace, was filed for lien and execution in the court of common pleas in case No. 150590, and an order of execution was issued to the sheriff by the clerk of said court. Plaintiff further alleges that in the bill of particulars filed before the magistrate the defendant fraudulently represented and alleged that the

plaintiff was indebted to it for goods and merchandise, to-wit, groceries alleged to have been sold and delivered to the plaintiff by the defendant, but that said bill of particulars was in truth and in fact false; that the plaintiff was not indebted to the defendant either personally or by agent.

Plaintiff further alleges that he had no notice or knowledge of the taking of the judgment and that he was not served with process and did not authorize any attorney to enter an appearance, and at the time the action was instituted and at the time the judgment was rendered against him before the magistrate the plaintiff was absent from the city, and after that the defendant in this case, who was the judgment creditor, in fraud of the rights of the plaintiff, proceeded with the action before the justice and caused judgment to be entered. Plaintiff further said that he had no knowledge of the judgment until the 13th of July, 1912. The plaintiff prays for an injunction against levying execution on said judgment and for a vacation and setting aside of said judgment and for all other equitable relief.

The defendant in its answer admits that it was a corporation; that it had recovered a judgment for the amount set out in plaintiff's petition before the magistrate and that it had filed said judgment for lien and execution in the court of common pleas; and for further answer denies each and every other allegation not specifically admitted; and prays that it be dismissed and that the temporary restraining order be dissolved.

At the hearing the plaintiff testified that he had lived at 408 West Fifth street, where he conducted a hotel, known as the Douglas Hotel, and in the year 1907 the hotel was managed by a man named Brown; that prior to his departure for Europe in June, 1907, plaintiff had notified his creditors that he intended to leave the city, that they should not extend credit to any one on his behalf and that he had paid his creditors in full. Plaintiff also testified that during the year 1912, his usual place of residence was on the third floor front at 408 West Fifth street. Plaintiff also testified that he had personally called at the place of business of Colter & Company on Sixth and Main streets and told some one in the store whom he didn't remember, not to ex-

tend any credit on his account. Plaintiff also testified that before his departure for Europe in 1907, he had entered into a lease with Brown, his manager, by which Brown was to run the hotel and pay five dollars a day to plaintiff for running the hotel. Plaintiff also produced the porter, who is in charge of the building at 408 West Fifth street, and he testified that while the plaintiff was in Europe he always kept the door leading to the third floor locked and that no person could enter there without his consent or without getting the key from him, and that no constable or any other person entered there, and that he had charge of the rooms and he never found any summons under the door.

The defendant on its behalf introduced the original papers of the case in the magistrate's court. From these papers it appears that there were two summons issued in the case; the first was returned under date of March 22, 1912, and showed a service on the plaintiff at the usual place of residence. The constable testified, however, that he went to 408 West Fifth street, went into the saloon, asked for Mr. Gaither, was told that he was not in and that he left the summons with the barkeeper to be handed to him. On reporting this to the magistrate he was informed this was not a good service, and an alias summons was issued under date of March 28, 1912, and that he served this summons on the same day and made a return under date of March 29, 1912, at Edward G. Gaither's usual place of residence. He testified that he went to 408 West Fifth street, having received instructions that he should go up as far as he could, which was the third floor, that he did so and that he knocked on the front door and receiving no respone, put the summons under the door.

The defendant produced three persons connected with the business, all of whom testified that they had never seen the plaintiff at the store and had never received any written or verbal notice from him not to extend any credit to Brown or to any one on his account. The books of the defendant company were also introduced in evidence and these showed that prior to the account sued upon the defendant had done business with Gaither and that Gaither had paid previous accounts. The ac-

count due in May was not paid until sometime in June. The testimony shows that the defendant did not know that Gaither was in Europe in March, 1912, when suit was filed before the magistrate, and there is no testimony whatsoever to show that the constable knew that Gaither was in Europe or that the defendant's attorney knew this fact.

I am therefore of the opinion that there is no evidence offered in this case whatsoever by which fraud is to be charged against defendant in the bringing of this suit in March, 1912. The fact that this account had been charged to profit and loss and that Gaither had been asked to pay it and had denied his liability, does not raise a presumption of fraud because the suit was brought afterwards. This proceeding is in the nature of a direct attack upon the judgment recovered before the magistrate, and it is a settled rule of law in this state in respect to domestic judgments of courts of general jurisdiction that, when it appears by the record that the court has found affirmatively the fact on which its jurisdiction rests, that such judgments can not be set aside, except for fraud, collusion, coercion, or some misconduct by means of which the defendant has secured an unconscionable advantage. *McCurdy* v. *Baughman,* 43 Ohio St., 78; *Dixson* v. *Bird Varnish Co.,* 21 Weekly Law Bulletin, p. 258, and cases cited there.

The plaintiff contends, however, that there was not proper service on him in this case before the magistrate, because he was absent from the city at the time of the service and because as a matter of fact the constable did not make the service.

As to the question of whether the service was made in accordance with the endorsement of the constable, the evidence of the constable is positive as to the manner in which the service was made, and the only evidence against this is the testimony of the porter who says the door was always locked and that he kept the key in his pocket and that he was always in the place. Inasmuch as the plaintiff must make out his case in a matter of this kind by clear and convincing evidence, he has not sustained his burden in that respect, and therefore I find that the service was made in accordance with the return of the constable, to-wit, at the usual place of residence. That this was

the usual place of residence of the plaintiff was admitted by the plaintiff himself, who testified that he occupied the third floor front and on his return from Europe in 1912, he went back to those rooms and that in the fall of 1912, he registered as an elector from the eighteenth ward, giving his residence as 408 West Fifth street. Plaintiffs contends, however, that he was absent from the city and therefore there was no good service here. Counsel for both plaintiff and defendant have filed voluminous briefs in this case, and I have carefully examined all their authorities.

The defendant relies on Section 10237, General Code, which permits the serving of a true copy of the summons upon the plaintiff personally, or "by leaving it at his usual place of residence." The plaintiff contends that "usual place of residence" does not necessarily mean where the plaintiff sleeps, but where he is usually to be found, and because Gaither was not actually living at 408 West Fifth street at the time the summons was supposed to have been left, inasmuch as he was in Europe, there was no proper service.

To support this view three cases were cited, *Blackwell* v. *England,* 8 E. & B., 541; *Copeland* v. *Cunningham,* 12 W. Va., 750; *Berryhill* v. *Sepp,* 106 Minn., 458, at 459. In these cases the words used are "place of abode," and all of them place a narrower construction on place of abode than is placed in this state on the words used in the statute, "usual place of residence."

In support of defendant's contention that the constable's return is proper, and that a summons may be served on one though absent at the time of service, he has cited the following cases: *Henneman* v. *Thompson,* 8 S. C., 115; *Burbage* v. *American National Bank,* 95 Ga., 503; *Conwell* v. *Atwood,* 2 Ind., 289,

In the Indiana case it was held that where service of a writ is permitted at the place of residence, the fact that the defendant was absent in another state, and was not actually notified of the suit until the first day of the term when the summons were returnable, affords no reason for setting aside the return.

In addition to the cases cited by counsel, the court has found one Ohio decision bearing on this question, to the effect that ab-

sence at the time of service is no defense.   In *Howard* v. *Abbey*, 1 W. L. Monthly, 278, the Cuyahoga Common Pleas Court held, the fact that a defendant is absent, out of the state, at the time of the service of summons by leaving a copy at the place of his residence, and is ignorant of the pendency of the action until after judgment against him by default, is not an unavoidable casualty or misfortune that did prevent him from making a defense.

The service in this case, therefore, being regular and no fraud being shown, it necessarily must follow that there is no power in a court of equity to set aside the judgment below.

The plaintiff claims that the equities of the case are with him, and that having shown that he was absent from the city, that this was such an accident that equity will relieve against on the facts presented.   The authorities, however, do not bear out this contention.

In *Freeman on Judgments,* paragraph 532, it is laid down:

"The vacating or enjoining of a judgment by default is governed by the same rules and must be supported by the same cause which would be sufficient to vacate or enjoin any other judgment."

Therefore, for the reasons laid down by the Supreme Court in *McCurdy* v. *Baughman*, 43 Ohio St., 78, where the court said that the enforcement of a judgment rendered by a justice of the peace upon default will not be enjoined, unless some equitable ground of relief be shown, such for instance, as fraud or coercion, unless such fraud is shown, relief must be denied.

As stated above, the examination of the evidence in this case does not show fraud on the part of the defendant, his agents or attorneys, or on the part of the constable or the magistrate. Furthermore, the plaintiff did not sustain the burden placed upon him to show in his direct attack on the judgment that the return was not duly made in accordance with the endorsements on the back thereof.

For these reasons, the relief prayed for will be denied and the petition dismissed.