# United States Court of Appeals
## For the Eighth Circuit

_____

No. 24-2187

_____

Karla Smith, on behalf of themselves and others similarly situated; Holly Bladel

*Plaintiffs - Appellants*

v.

Kimberly Reynolds, in her official capacity as Governor of State of Iowa; Beth Townsend, in her official capacity as the Director of Iowa Workforce Development; State of Iowa

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Southern District of Iowa - Central

_____

Submitted: March 19, 2025
Filed: June 2, 2025

_____

Before GRUENDER, BENTON, and SHEPHERD, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Karla Smith and Holly Bladel sued Iowa state officials and the State of Iowa ("Iowa") after Iowa opted out of federal programs made available during the Covid-19 pandemic. Defendants moved to dismiss on several grounds, including plaintiffs'

failure to state a claim and Eleventh Amendment immunity. The district court[1] granted the motion, which we affirm.

## I. Background

In March 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") in response to the Covid-19 pandemic. Pub. L. No. 116-136, 134 Stat. 281 (2020) (codified as amended at 15 U.S.C. §§ 9001-9141). The CARES Act created temporary programs funded by the federal government and administered by the states to supplement state unemployment benefits.

Three CARES Act programs are relevant here. The first provided federal funds to those who were otherwise ineligible for traditional unemployment payments. *Id.* § 9021 ("Pandemic Unemployment Assistance" or "PUA"). The second added extra weeks of benefits to those who had already exhausted their state benefits. *Id.* § 9025. ("Pandemic Emergency Unemployment Compensation" or "PEUC"). The third added extra federal dollars to the amount states were already paying their unemployed citizens. *Id.* § 9023. ("Federal Pandemic Unemployment Compensation" or "FPUC"). The United States Treasury funded the CARES Act programs. *See id.* §§ 9021(g)(1)(B), 9023(d)(3), 9025(d)(1)(B). The funds were deposited into each state's existing unemployment-benefits fund—called the Unemployment Trust Fund—and later distributed by the states. *Id.* §§ 9021(g), 9025(d).

State participation in these three programs was optional. States could choose to participate by entering into an agreement with the U.S. Department of Labor ("DOL") and could withdraw from any of the programs upon thirty days' notice. *See id.* §§ 9021(f), 9023(a), 9025(a)(1). All three programs expired on September 6, 2021. *Id.* §§ 9021(c)(1)(A)(ii), 9023(b)(3)(A)(ii), 9025(g)(2).

---

[1]The Honorable Stephanie M. Rose, Chief Judge, United States District Court for the Southern District of Iowa.

In March 2020, Iowa entered into an agreement with the DOL to distribute benefits under the PUA, PEUC, and FPUC programs. Smith and Bladel each sought and received benefits through these programs. Then, in May 2021, Iowa Governor Kimberly Reynolds announced that Iowa would end its participation in the CARES programs, effective June 12, 2021.

Plaintiffs sued Iowa, Governor Reynolds ("the Governor"), and Director of Iowa Workforce Beth Townsend ("the Director"), alleging they violated the United States Constitution, the Iowa Constitution, and Iowa state law by disenrolling from the CARES Act programs. The gravamen of their complaint was that defendants had no authority to end participation in the CARES programs and that doing so deprived them of a protected property interest. The defendants moved to dismiss the claims pursuant to Federal Rule of Civil Procedure 12(b)(6) on several grounds, including that defendants are immune from suit under the Eleventh Amendment and that plaintiffs lack a constitutionally protected property interest in the CARES Act benefits. The district court dismissed the case, and Smith and Bladel appeal. For simplicity, we will refer to Smith in place of both appellants.

## II. Discussion

We review *de novo* the district court's decision to dismiss the complaint under Rule 12(b)(6). *Sorenson v. Sorenson*, 64 F.4th 969, 975 (8th Cir. 2023). The "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

## A. Federal Constitutional Claim

Smith first contends that the district court erred in dismissing her claim that defendants violated the Takings Clause and Due Process Clause of the U.S. Constitution. Smith brought her claim under 42 U.S.C § 1983 and asserted an

official-capacity claim against Iowa, the Governor, and the Director, and an individual capacity claim against the Governor and Director.

## 1. Official Capacity Claim

We begin with Smith's official-capacity claim and conclude that it is barred by the Eleventh Amendment. The Eleventh Amendment bars a suit brought by a private individual against a state. *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267-68 (1997). The same rule applies to a suit against the Governor and Director in their official capacities because "the state is the real, substantial party in interest." *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984). However, under the exception established in *Ex parte Young*, a private party may sue state officials in their official capacities for prospective injunctive relief. *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (citing *Ex parte Young*, 209 U.S. 123 (1908)). Smith claims that the *Ex parte Young* exception applies here.

The *Ex parte Young* exception is limited to "cases in which a violation of federal law by a state official is ongoing as opposed to cases in which federal law has been violated at one time or over a period of time in the past." *Papasan v. Allain*, 478 U.S. 265, 277-78 (1986). Conversely, the exception does not apply to "reformulated request[s] for retrospective relief." *EEE Mins., LLC v. North Dakota*, 81 F.4th 809, 816 (8th Cir. 2023) (holding exception did not reach plaintiff's claim for "monetary relief" that was "repackage[d]" as a "request for an injunction that cures past injuries"). The Supreme Court has explained, "[i]n determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon*, 535 U.S. at 645 (internal quotation marks and alteration omitted).

Here, Smith effectively concedes that her requested relief is due to a one-time past act: defendant's decision to terminate benefits. Smith claims Iowa, the Governor, and the Director "took" unemployment benefits without "just compensation," and "took [the benefits] without due process." But that is simply not a claim of an "ongoing violation" under *Ex parte Young*. *See id.* Smith asserts that the district court could "enjoin the [defendants] to…'releas[e]' the funds to the beneficiaries of the federal statute." But there are no federal funds held by Iowa waiting to be released—when Iowa disenrolled in the program, the federal government could not make those payments because Iowa no longer had an active agreement with the DOL. *See* 15 U.S.C. § 9023(a) (conditioning payment of CARES Act benefits on states entering into and maintaining an agreement). Though Smith styles her claim as requesting forward-looking injunctive relief, the core of her request entails nothing more than retroactive monetary reimbursement. *See EEE Mins.*, 81 F.4th at 816. This "reformulated request for retrospective relief" is barred by the Eleventh Amendment. *See id.* Because Smith's official-capacity claim is against Iowa, and no exception to the Eleventh Amendment applies, the claim is barred.

## 2. Individual Capacity Claim

We next consider Smith's due process claim[2] against the Governor and Director in their individual capacities.[3] We conclude Smith lacks a constitutionally protected property interest in the CARES Act benefits, so this claim also fails.

To prove a Due Process violation, Smith must first establish that she has a "protected . . . property interest" in the CARES Act unemployment benefits. *See Gordon v. Hansen*, 168 F.3d 1109, 1114 (8th Cir. 1999) (per curiam). An individual

---

[2]Though Smith's complaint does not specify whether she asserts a procedural or substantive due process claim, we treat it as a procedural claim given the nature of the allegations in Smith's Amended Complaint. The district court also construed it as such, and Smith does not contest that determination here.

[3]On appeal, Smith abandons her individual-capacity takings claim.

lacks a protected property interest in a benefit "if government officials may grant or deny [the benefit] in their discretion." *Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005).

Here, Smith lacks a protected property interest because Iowa's participation in the CARES Act was discretionary—Iowa was free to opt in or out of the CARES programs. *See id.* (holding a person lacks a protected property interest in benefits if the government has the discretion to deny those benefits). The statutory language for PEUC and FPUC programs both explicitly provide that states could withdraw upon thirty days' notice, so Iowa had discretion to opt out of those funds. *See* 15 U.S.C. § 9023(a) (providing that a state "may enter into and participate in an agreement" for FPUC benefits and any state that is a party to an agreement may terminate the agreement upon "30 days' written notice"); § 9025(a)(1) (same for PEUC funds). And though the statutory language for PUA funds does not mention that states could withdraw upon thirty days' notice, the statute *does* provide that PUA benefits are contingent on an agreement between the DOL and the state. *See* § 9021(f)(2) (providing that PUA benefits "shall be paid to each State which has entered into an agreement under this subsection"); *see also Ireland v. United States*, 101 F.4th 1338, 1343-44 (Fed. Cir. 2024) (holding federal government "has no obligation to pay PUA benefits to individuals in the absence of an agreement with the state") Here, the DOL incorporated the withdrawal provision into the Iowa state agreements for all three programs,[4] so Iowa had discretion to opt out of the PUA program along with the FPUC and PEUC programs. Therefore, Smith lacks a protected interest in any CARES Act benefits.

Accordingly, we find no error in the district court's determination that Smith's due process individual-capacity claim fails.

---

[4]*See Stutzka v. McCarville*, 420 F.3d 757, 760 n.2 (8th Cir. 2005) (noting that this court may take judicial notice of public records).

## B. Iowa State Law Claim

Smith next asserts that the district court erred in dismissing her claim that defendants violated Iowa state law. As with Smith's constitutional official-capacity claim, we conclude that Smith's state law claim is barred by the Eleventh Amendment.

Smith's state law claim is a direct action under Chapter 96 of the Iowa Code which governs Iowa's unemployment insurance program and directs Iowa to "adopt[] appropriate rules, regulations, administrative methods, and standards, as may be necessary to secure" the "advantages" of several specifically enumerated unemployment-benefits programs. *See* Iowa Code § 96.11(10)(a) (2023). She contends that the defendants violated Chapter 96 by terminating her unemployment benefits. But sovereign immunity bars this court from instructing "state officials on how to conform their conduct to state law" because "[a] federal court's grant of relief against state officials *on the basis of state law*, whether prospective or retroactive, does not vindicate the supreme authority of federal law." *Pennhurst*, 465 U.S. at 106 (emphasis added).

As Smith concedes, *Pennhurst* controls and sovereign immunity bars this claim unless we find that her case fits a narrow exception recognized by the Supreme Court in *Branch v. Smith. See* 538 U.S. 254 (2003). In *Branch,* a federal district court fashioned a state-redistricting plan for Mississippi pursuant to the Voting Rights Act and the Constitution. *Id.* at 260-261. The Supreme Court reasoned that the federal district court did not intrude on state sovereignty when it created the redistricting plan because it did not "instruct state officials on how to conform their conduct to state law," but rather "granted relief on the basis of *federal* law—specifically the Federal Constitution." *Id.* at 278 n.* (internal alteration omitted).

Smith argues that her request for injunctive relief is likewise just a request that the court enforce relief on the basis of federal laws (the Social Security Act, the CARES Act, and the Federal Extended Unemployment Tax Act) that have been

implemented by Iowa through Chapter 96. We disagree. An injunction forcing Iowa to distribute funds "does not vindicate the supreme authority of federal law." *See Pennhurst*, 465 U.S. at 106. The CARES Act did not *require* that states accept funds, and it allowed for states to terminate their reception of the funds. 15 U.S.C. §§ 9021(f)(2), 9023(a), 9025(a)(1). Thus plaintiffs can only rely on the Iowa Code, and this court may not instruct "state officials on how to conform their conduct to state law." *Pennhurst*, 465 U.S. at 106. Therefore, no exception to *Pennhurst* applies, and the district court did not err in concluding Smith's claim is barred by sovereign immunity.[5]

## C. Declaratory Judgment Claim

Finally, Smith contends the district court erred in dismissing her claim for a declaratory judgment. Smith argues that declaratory relief "is needed to establish Plaintiffs' and Defendants' legal rights and obligations with respect" to the decision to terminate the CARES Act unemployment benefits. But declaratory remedies are "meant to define the legal rights and obligations of the parties in anticipation of *some future conduct*, not simply to proclaim liability for a past act." *Just. Network Inc. v. Craighead Cnty.*, 931 F.3d 753, 764 (8th Cir. 2019). As the district court aptly put it, "[a]ny alleged violation of the law occurred nearly three years ago when Iowa announced its intent to withdraw from the pandemic-related unemployment program." Additionally, Smith's request for declaratory relief on her Chapter 96 claim fails because it is simply a request for a federal court to tell a state how to conform its conduct to state law, which is something a federal court cannot do. *See Pennhurst*, 465 U.S. at 106. Thus, the district court correctly dismissed Smith's declaratory judgment claim.

---

[5]Smith argued in her opening brief that defendants also violated the Iowa Constitution, but in her reply brief conceded that "[f]ederal [c]ourts cannot tell a State how to conform its conduct to State law." To the extent she still maintains her claim under the Iowa Constitution, the district court properly dismissed it because "[a] plaintiff may not bring a state claim under the aegis of § 1983." *Preston v. Pleasant Hill*, 642 F.3d 646, 650 (8th Cir. 2011).

## III. Conclusion

For the foregoing reasons, we affirm the judgment of the district court.

_____